**RCA COMMUNICATIONS, Inc.,**
**Appellant,**

v.

**FEDERAL COMMUNICATIONS COM-MISSION, Appellee,**

**Mackay Radio and Telegraph Company,**
**Inc., Intervenor.**

**No. 13025.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 12, 1956.

Decided Oct. 11, 1956.

Mr. John T. Cahill, of the bar of the Court of Appeals of New York, New York City, pro hac vice, by special leave of Court, with whom Messrs. Howard R. Hawkins, New York City, and James E.

Greeley, Washington, D. C., were on the brief, for appellant.

Mr. Loftus E. Becker, Washington, D. C., also entered an appearance for appellant.

Mr. Warren E. Baker, Gen. Counsel, Federal Communications Commission, with whom Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, and Messrs. Daniel R. Ohlbaum and Henry Geller, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. James A. Kennedy, New York City, with whom Messrs. John F. Gibbons, New York City, and Burton K. Wheeler, Washington, D. C., were on the brief, for intervenor.

Before EDGERTON, Chief Judge, and PRETTYMAN and BAZELON, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from an order of the Federal Communications Commission entered upon remand by this court pursuant to a mandate of the Supreme Court of the United States. The Commission's decision on remand, and its order based thereon, granted the applications of Mackay Radio and Telegraph Company, Inc., for modification of its license to operate additional radiotelegraph circuits with The Netherlands and Portugal and an additional radiotelegraph circuit with The Netherlands via Tangier relay. These additional circuits duplicate existing direct and via Tangier radiotelegraph circuits operated by RCA Communications, Inc. (called in this litigation "RCAC"), as well as direct and indirect cable telegraph circuits, direct radiotelephone service, and air mail service. RCAC appeals. Mackay appears as intervenor.

The original order of the Commission granting the application of Mackay was entered in 1951. RCAC appealed from that order, and this court reversed.[1] The Supreme Court granted certiorari and vacated our judgment,[2] remanding with directions to remand to the Commission. In so doing the Supreme Court laid down certain standards which the Commission should follow in order to reach a valid order. Mr. Justice Frankfurter, speaking for the Court, explained its rejection of the Commission's order in the following terms:

> "The Commission has not in this case clearly indicated even that its own experience, entirely apart from the tangible demonstration of benefit for which RCAC contends, leads it to conclude that competition is here desirable. It seems to have relied almost entirely on its interpretation of national policy. Since the Commission professed to dispose of the case merely upon its view of a principle which it derived from the statute and did not base its conclusion on matters within its own special competence, it is for us to determine what the governing principle is."[3]

The Court went on to say that it is impossible to state without serious qualification that competition is favored as a national policy, and it denied that encouragement of competition as such is "the single or controlling reliance for safeguarding the public interest."[4] It further stated that "Had the Commission clearly indicated that it relied on its own evaluation of the needs of the industry rather than on what it deemed a national policy, its order would have a different foundation."[5] Rounding out

---

1. RCA Communications v. Federal Communications Comm., 91 U.S.App.D.C. 289, 201 F.2d 694 (1952).

2. Federal Communications Comm. v. RCA Communications, Inc., 346 U.S. 86, 73 S. Ct. 998, 97 L.Ed. 1470 (1953).

3. Id., 346 U.S. at page 91, 73 S.Ct. at page 1002.

4. Id., 346 U.S. at page 93, 73 S.Ct. at page 1003.

5. Id., 346 U.S. at page 94, 73 S.Ct. at page 1004.

its criticism of the Commission's action the Court said:

"To say that national policy without more suffices for authorization of a competing carrier wherever competition is reasonably feasible would authorize the Commission to abdicate what would seem to us one of the primary duties imposed on it by Congress. And since we read the opinion of the Commission as saying precisely that, we think the case must be remanded for its reconsideration. We therefore do not say that authorization of Mackay under all the relevant circumstances, including the significance the Commission may rightly attribute to the facts on the basis of its experience, may not be in the public interest. We think it not inadmissible for the Commission, when it makes manifest that in so doing it is conscientiously exercising the discretion given it by Congress, to reach a conclusion whereby authorizations would be granted wherever competition is reasonably feasible. This is so precisely because the exercise of its functions gives it accumulating insight not vouchsafed to courts dealing episodically with the practical problems involved in such determination. Here, however, the conclusion was not based on the Commission's own judgment but rather on the unjustified assumption that it was Congress' judgment that such authorizations are desirable." [6]

█ It follows that we must examine the decision on remand with this question in mind: Did the Commission again render a decision based upon an imagined national policy, or did it instead rely upon its own judgment in this matter, educated by experience, and supported by consonant findings?

The decision of the Commission contains (1) a history of this proceeding, (2) an evaluation of the part competi-

tion has played in the development of international telegraph communications since 1934, with emphasis on competitive, duplicate, direct circuits operated by competing radiotelegraph carriers, and (3) a detailed discussion of the applicability of the general conclusion that competition is feasible and beneficial to the specific circuits involved here. Thereafter the Commission set out conclusions and framed an order favorable to the applicant.

In discussing the importance of competition in the history of this sector of the communications industry, the Commission first pointed out that radiotelegraph circuits are handling an ever-increasing proportion of international message telegraph traffic. In 1934 there were 65 international radiotelegraph circuits in operation. At that time eleven points were being served by two or more competing direct circuits. RCAC and Mackay operated competing circuits to seven points. In 1954, the Commission said, "The total authorized direct circuits for all United States carriers were 137, of which 133 were actually operated. * * * Of those in operation, a total of 29 points had two or more circuits as follows: 14 points had two; 12 points had three; 2 points had four; and 1 point had five." It would thus appear that 77 of 133 operating circuits were competing duplicate circuits.

The Commission then declared that its experience has indicated that the ability to offer competing direct-circuit service is a major factor in the solicitation of new customers and tends to enhance greatly a carrier's competitive position. It concluded "that competition by direct circuits is probably the most important factor in the general radiotelegraph competitive picture."

During this period of substantial and increasing competition by duplicate direct circuits, the two corporations here involved, RCAC and Mackay, both showed healthy development. Both increased their shares of the industry's overall

6. Id., 346 U.S. at pages 95–96, 73 S.Ct. at pages 1004–1005.

message volume. RCAC has exhibited ample earnings throughout the period. Mackay, although its financial record for the entire period shows as many years of net loss as of net profit, has nevertheless emerged in the most recent period, 1951–53, as a highly profitable concern. On the basis of the financial data before it, as outlined above, the Commission found that competition in direct radiotelegraph circuits is reasonably feasible.

With respect to public benefits arising out of such competition, the Commission cited greater plant investments, specific improvements in facilities and equipment, newly introduced services, and lower rates. It then stated that its experience in the field leads it to conclude that competition, while perhaps not the sole cause, was certainly an important factor in bringing about these public benefits.

The Commission then turned to the two applications at issue. It found that Mackay, since receiving permission to operate, has furnished adequate service and that not only Mackay but also its competitors have improved their equipment, facilities, and handling practices. The Commission concluded that these latter improvements substantiate its general experience that competition is an important factor in better service to the public.

With regard to new service to the points in question, it appears that since the initial decision granting Mackay's application RCAC has inaugurated "TEX" and "leased channel" services to The Netherlands. The Commission, admittedly not on the basis of direct proof but relying on its experience in the field to weigh the intangibles involved, saw a definite causal relationship between the prospect of effective competition and these innovations.

Turning to RCAC's recital of the adverse effects upon it and the industry of the introduction of the Mackay circuits, the Commission discussed first the alleged surplus capacity of RCAC. It pointed out that RCAC's actual surplus capacity has dropped, even in the face of its acquisition of four new channels to The Netherlands, this fact being due to the introduction of the new services just mentioned. The Commission justified its division of the diminishing Portuguese market by citing its general finding that effective competition there is in the public interest. It further observed that competition by Mackay has had the effect of spurring other types of competitors to improve service and to obtain a larger share of message traffic.

The Commission next discussed RCAC's claim of economic loss owing to the new competition. It first observed that there is no direct means of determining operating cost for a single circuit, and it challenged the means of allocation used by RCAC as being inaccurate. However, taking that method of allocation at face value, the Commission pointed out that it shows an increase in net income of over $13,000 per annum for the two circuits between 1950 and 1953. This, according to the Commission, indicates that competition is profitable. But, if the RCAC figures are credible, it would appear that the net loss on Portuguese service increased by $30,000 a year but was compensated for by a still greater increase in the net gain from service to The Netherlands.

The Commission dismissed RCAC's objection that additional scarce frequency bands will be used by Mackay's lines with the answer that this is unlikely but, if it should happen, benefits to the public would justify it. Finally, after reiterating the Supreme Court's statement that no tangible benefits need be shown, the Commission concluded "that the reaffirmation of the Mackay applications gives ample ground for a reasonable expectation that competition will have not merely some, but a considerable, beneficial effect."

This summary of the Commission's decision on remand would appear to make it clear that it has not placed its reliance upon an imagined national policy favoring competition but, instead, has acted

in accordance with its own best judgment; that it has brought its experience to bear throughout; and that it has bolstered its conclusions with factual data the great weight of which is consonant with the result.

 It is true that the challenged RCAC figures show a greatly increased loss to RCAC on the Portuguese service, and no justification for considering this loss as compensated for by profits from The Netherlands circuits is presented in the Commission's discussion. It would appear that the Portuguese operation has been dealt a serious blow. But we think that the question whether the results of certain of a carrier's operations are to be viewed together or must be considered separately, operation by operation, is one peculiarly within the area of Commission judgment. So long as its treatment is not arbitrary we cannot change it. In the instant case we think its action in this respect was not unreasonable.

 RCAC attacks the decision of the Commission on remand also because an initial decision by the hearing officer was not required and an initial decision by the Commission itself was not made. The Commission says the point was not raised before it and was not stated in the notice of appeal, and that the issue is therefore not properly before this court. RCAC replies that in its petition for rehearing upon the decision on remand it raised the issue as to the omission of the initial decision. But the only reference to an initial decision made in that petition was in the following: "The Commission determined to bypass its traditional procedures and omit an initial decision, thereby depriving RCA of any opportunity to file exceptions and to be heard in oral argument. As a result,

the full Commission has never heard oral argument upon the supplemental record * * *." It may well be disputed that the foregoing reference was sufficient to raise as an issue error in the omission of an initial decision. However that may be, it seems clear enough that the point was not raised in the notice of appeal or in the statement of reasons for appeal. Section 402(c) of the Communications Act [7] provides that in such an appeal the notice shall contain "a concise statement of the reasons on which the appellant intends to rely, separately stated and numbered". It is unnecessary for us to decide this procedural point, because the Commission made a finding upon the record that due and timely execution of its functions required that the record be certified to it by the hearing examiner without preparation of an initial or recommended decision. This was in the order for further hearings entered March 1, 1954, after the remand. No specific exception was ever taken to that portion of the order. Section 409(b) of the Communications Act [8] authorizes the omission of an initial decision and oral argument thereon where the Commission makes such a finding upon the record. RCAC says that the finding is without support in the record, but we think the outline we have already given of the proceedings in this matter, the importance of the case, and the fact that the further hearings and final decision were upon remand from the Supreme Court amply support the finding.

It appears to us that the Commission has brought itself within the requisites described by the Supreme Court for a valid order, and so that order will be

Affirmed.

---

7. 48 Stat. 1093 (1934), as amended, 47 U.S.C.A. § 402(c).

8. 66 Stat. 721 (1952), 47 U.S.C.A. § 409 (b).